## AURRECOECHEA *v.* BANGS.

IN ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

Submitted January 5, 1885.—Decided April 13, 1885.

Lands covered by a claim under Mexican or Spanish grants, but not found within the limits of the final survey of the grant when made, are within the excepting clause of the act of July 23, 1866, 14 Stat. 218, and are restored to the public domain by the survey.

A pre-emptor of land thus restored to the public domain, who takes the neces-sary steps in the land office to assert and perfect his title as such, before a claimant under a selection of the same lands by the State of California makes his claim, and who obtains a patent therefor, has a legal title thereto, which is not subject to be dispossessed by any equities in the latter claimant. *Huff* v. *Doyle*, 93 U. S. 558, distinguished.

This suit in the nature of a bill in equity was commenced in a State court of California by plaintiff in error to charge defendant in error, who held the legal title to the lands in dispute, as trustee for plaintiff in error. The facts which make the case are stated in the opinion of the court. The defendant demurred to the bill and the demurrer was sustained. This judgment being affirmed by the Supreme Court of the State, the plaintiff below brought the case here by writ of error.

*Mr. Edward J. Pringle* for plaintiff in error.

*Mr. A. Chester* for defendant in error.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Supreme Court of California.

The case relates to the title to lands in that State and was decided on a demurrer, which was sustained, to a petition of plaintiff in error. This petition was in the nature of a bill in chancery seeking to hold the defendant, who had the legal title to the land, by a patent from the United States, to be a trustee for the plaintiff, on the ground that in a contest between the two before the Land Department the officer of that department had, by the decision in favor of the defendant, deprived plaintiff of his superior right by a misconstruction of the law.

The land in controversy was within the exterior limits of a claim under a Mexican grant. The validity of this grant was established by proceedings under the act of Congress on that subject. But when the survey was made and finally confirmed which ascertained the locality of this grant, it was found that the land in suit was not within it. This fact was established on June 6, 1871, by the confirmation of the final survey of that grant.

On July 1, 1871, the map of the congressional survey of the township, which included the land and which was completed by subdivision into sections and quarter-sections, was filed in the local land office of the district of San Francisco.

Bangs, the defendant, who had been residing on the land for some time, made and filed with the register and receiver his declaratory statement, asserting an intention to pre-empt the land June 26, 1871. Under this claim the defendant, having complied with the requirements of law, received the patent of which plaintiff claims the benefit.

Plaintiff's superior equity, as he sets it out in his petition, arises under the act of Congress of March 3, 1853, granting to the State of California every sixteenth and thirty-sixth section of the public lands for school purposes. 10 Stat. 244. As none of the public lands in California had been surveyed, it could not then be known where these school sections would be located; and, in view of the fact that many settlements would be made on those sections before they could be ascertained by survey, the seventh section of the act, while validating the claims of such settlers, authorized the State to select other lands in lieu of them, and in lieu of such as were reserved for public use or taken for private claims.

The history of the attempt of the State to make these surveys for herself, and to exercise the right of selection under this seventh section of the act of 1853, is given in the opinion of this court in the case of *Huff* v. *Doyle*, 93 U. S. 558, and reference is here made to that history for an understanding of the present case. Indeed the land in that case, as in this, was a part of the Mexican claim Las Pocitas, and the principles announced in that case are decisive of this.

It appears from the history there detailed that the Land Department of the United States, refusing to recognize the surveys made by State authority, and the selection made by the State and sold and certified to its purchasers, Congress, on July 23, 1866, 14 Stat. 218, passed an act for the relief of such persons and to remedy the evils of this unauthorized action on the part of the State of California as far as possible.

The first section of this act is as follows: " That in all cases

where the State of California has heretofore made selections of any portion of the public domain in part satisfaction of any grant to the State by any act of Congress, and has disposed of the same to purchasers in good faith under her laws, the lands so selected shall be and hereby are confirmed to said State." A proviso making several exceptions to this confirmation excludes from it among others " any land held or claimed under any valid Mexican or Spanish grant." The second section makes it the duty of the authorities of the State, when the selections named in section one have been made upon land which has been surveyed by the authorities of the United States, to notify the register of the land office of such selection, and if, upon inquiry by the local officers, such selection is found to be in accordance with section one, the Commissioner of the General Land Office shall certify the land to the State in the usual manner. This second section of the statute had reference to cases where the selections had been made of land which had been surveyed at the date of the passage of the act.

The third section made provision for selections made of lands which had not been surveyed by the United States at the date of the statute, which is the case before us. This section says that the selection so made shall have, when the lands are afterward surveyed, the same force and effect as the pre-emption rights of a settler on the unsurveyed public lands, and the claimant shall be allowed the same time after the surveys have been made to prove up his purchase as is allowed under the pre-emption laws.

The bill alleges that in the year 1863, the State, by its agent, selected this land and sold to a purchaser for a valuable consideration, from whom plaintiff purchased it. It then alleges that, some time in the year 1866, this selection was made known to the register and receiver of the land office, and a note of it made on their books. Complainant further says, that within three months after the completion of the surveys by the United States, he appeared before these officers and asserted his claim under that selection, and proved it upon the contest with Bangs before the Department.

There would seem to be no objection to the case made by

plaintiff, but for the fact that the land in controversy was at the time of this selection by the State part of a claim under a Mexican grant. The grant itself was confirmed as valid by judicial proceeding, though upon final survey, this piece of land did not fall within it. But the exclusion of the proviso of the first section of the act of 1866 is of land held or *claimed* under a valid Mexican grant. This land was claimed under a Mexican grant, which proved to be valid, though, as located, it did not include all the land claimed.

In the case of *Huff* v. *Doyle*, already cited, we held that land embraced in this Mexican claim, though not included in the final survey, was within the excepting clause of the proviso of the act of 1866.

When this selection was made by the State in 1866, the land was not subject to such selection. The act of making such a selection was a nullity. It conferred no right on the State or its vendee, and when the United States made its remedial and confirmatory statute it refused to confirm selections within the bounds of Mexican claims and did not confirm this.

But in the case of *Huff* v. *Doyle* we held that, after the grant was surveyed and the surplus thus restored to the public domain and the congressional survey completed, the party might then present his claim under the selection, and if no superior right existed he would be entitled to the land. We said, referring to this legislation: " In all this we see the purpose of Congress to refer the exercise of the right of the State to select indemnity for school lands to the condition of the lands for which indemnity is claimed, as well as those out of which it is sought at the time the official surveys are made and filed in the proper office, or as soon thereafter as the right is asserted."

In that case the claimant under the State made and proved up his claim as soon as the survey was made, and the land was accordingly certified to the State. His opponent, who had also made his declaration as pre-emptor while the land was still claimed under the Mexican grant, which claim was for that reason also void, and, before the public survey or the survey of that grant was made, renewed his claim after that of plaintiff,

and it was rejected. To both parties the condition of the land as liable to either claim at the time the claim was *rightfully* asserted governed the case.

In the case before us, the pre-emptor was the first, after the land ceased to be a part of the Mexican claim and was restored to the public domain, to make application to the land office and assert his right to appropriate it as public land. The officers of the department recognized his claim, as we think they were bound to do, for the land had only a few days before this become public land, and thus liable to pre-emption, or to the valid selection of the State. The invalid selection, made at a time when the land was not subject to selection, was not made good by the act of 1866 which expressly excluded it, and while we held that, after the land became public land and liable to selection the former selection might be made good, its *validity* could only relate to the time of its assertion in the land office after it became so liable.

But, if before this latter proceeding was had, or notice to the land office of an intention to rely on the old selection was given, other rights had intervened, the State right of selection could not be made to the prejudice of those rights.

On this principle, we think all the benefit which could possibly be derived from the confirmatory act of 1866 in regard to such cases as this is had, while the just rights of others are preserved. The statute, in express language, gives the holder of the invalid State selection the same right as a pre-emption settler on unsurveyed lands, and no more. Here Bangs had asserted his right as soon as the land was released from the Mexican claim, and a few days before the congressional survey became fixed. The least that can be said of Bangs' claim is, that it was of equal force when the maps of these surveys were filed, and, by his superior diligence in a lawful manner, he obtained the patent, and plaintiff has no *superior* equity which should take it from him.

As to the allegation in the bill that Bangs made a forcible intrusion on the possession of complainant in September, 1870, before the land became public land, that was a question to be considered by land officers in the contest between the parties,

and is not a fraud or mistake for which the patent can be held to enure to plaintiff's benefit. Nor does the plaintiff rely on it as sufficient. His claim to the benefit of defendant's title rests upon the selection made under State authority. That is the question of federal law which this court must decide, and as we have seen, that was well decided against him by the State court.

Its decree is accordingly

*Affirmed.*

Aurrecoechea *v.* Sinclair & Others. This case is submitted on the same facts and principles and the same briefs as the foregoing case, and the same judgment necessarily follows. The judgment of the Supreme Court of California is accordingly *Affirmed.* *Mr. Pringle* and *Mr. H. F. Crane* for plaintiff in error. *Mr. Michael Mullany* for defendant in error.

Aurrecoechea *v.* Bangs & Others; Aurrecoechea *v.* Gerk & Others; Aurrecoechea *v.* Clark & Others; Aurrecoechea *v.* French & Others. In accordance with stipulations by the parties on file in this court, that the above-mentioned cases should abide the result of the judgment in the case of the same plaintiff against Bangs, the judgments in the cases are *Affirmed.*